UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JANUSZ ZASTAWNIK,

    Plaintiff,

    v.                                                     Case No. 3:23-CV-577-CCB

THOR MOTOR COACH INC, et al.,

    Defendants.

**OPINION AND ORDER**

On May 17, 2022, Plaintiff Janusz Zastawnik bought a 2022 Thor Palazzo

recreational vehicle ("RV") that was manufactured by Defendant Thor Motor Coach, an

Indiana corporation, from one of its dealers in California—Mike Thompson's RV[1]. The

purchase included a written Limited Warranty from Defendant ("the Warranty")

covering portions of the RV for the first year after purchase. Soon after taking delivery

of the RV, Plaintiff experienced issues with the RV that led him to seek repairs from

Thompson's RV ("Thompson's"). Plaintiff also sought service once at Velocity Truck

Center ("Velocity") regarding components of the RV not covered under Defendant's

Warranty. Some issues remained after the service visits to Thompson's and Velocity. As

a result, Plaintiff sued Defendant in California state court on October 20, 2022, for (1)

breach of implied warranty of merchantability, (2) breach of express warranty, (3)

willful refusal to repurchase the RV in violation of California's Song Beverly Consumer

---

[1] Plaintiff's wife, Dorota Zastawnik, was a co-buyer of the RV, but is not a plaintiff in this action. (*See* ECF 63-4).

Warranty Act, and (4) violation of the Uniform Commercial Code. After Defendant removed the case to federal court in California, the case was transferred to this Court based on the forum selection clause in the applicable Warranty. In granting the transfer, the California court relied in part on Defendant's stipulation to application of the Song-Beverly Act to Plaintiff's claims in the Indiana court finding that it "eliminat[ed] the risk of diminishing Plaintiff's statutory rights under California law." (ECF 21 at 4). After transfer, this Court granted Plaintiff's motion for application of California's substantive law leaving no question that California law would decide Plaintiff's claims even here in Indiana. (ECF 66).

Before the Court now is Defendant's motion for summary judgment on all of Plaintiff' claims. Based on the applicable law, facts, and arguments, Defendant's motion for summary judgment will be granted.

## I.    FACTUAL BACKGROUND

These facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the analysis below. For ease of reference, the Court cites mostly to the factual statements filed in the parties' statements of material facts (ECF 57, 63, 65).

The 2022 Palazzo ("the RV") that Plaintiff ultimately purchased was delivered from Defendant to Thompson's RV around January 21, 2022, as evidenced by a signed Dealer Acceptance Form that included notes identifying about 14 issues observed on delivery. (ECF 65 at 2). A repair order dated January 26, 2022, shows warranty repairs on the RV by Thompson's on about 8 issues. (*Id*.). Another Thompson's repair order

dated May 12, 2022, reflects service on another issue that arose while the RV sat on Thompson's lot. (*Id.* at 3).

Plaintiff purchased the RV on May 17, 2022, but left it with the dealer because he had nowhere to store it. (ECF 63 at 2). Plaintiff was scheduled to conduct a walkthrough of the RV that day but rescheduled it for July 5, 2022. (ECF 65 at 4). While the RV was stored at Thompson's, more warranty repairs were performed under a repair order dated May 17, 2022, and showing completion of the work on June 17, 2022. (ECF 63 at 2). Plaintiff was unaware of this pre-delivery service work and did not request it. (*Id.*).

After the walkthrough on July 5, 2022, however, Plaintiff informed Thompson's that the power cord shore electrical outlet cover was broken. (ECF 65 at 5). Plaintiff wanted to leave the RV at Thompson's so they could address the outlet cover issue. (*Id.*). Thompson's preferred to provide Plaintiff with the part so he could replace it himself. (*Id.*). The repair order dated July 6, 2022, shows that the part was given to Plaintiff. (*Id.*). Plaintiff replaced it himself. (*Id.*).

After taking the RV from Thompson's, Plaintiff placed it in storage until late July when he retrieved it to take a trip to Mountain Lake Resort in California. (*Id.* at 6). While driving the RV to his home to pack it for the trip, Plaintiff noticed that the acceleration or throttle was not responding properly. (ECF 63-19 at 59). Plaintiff experienced the same throttle problem during the trip. (*Id.*). After the trip, Plaintiff took the RV to Thompson's on August 19, 2022, for service. (*Id.*). He reported the throttle issue to Thompson's along with eleven other issues. (*Id.* at 6–8). Thompson's informed Plaintiff that the throttle was a component warranted by the chassis manufacturer

Freightliner, not Defendant, and that they did not perform work on such components. (*Id.* at 8–9). The RV remained at Thompson's until October 20, 2022, for service on the other eleven issues. (ECF 65 at 6–7). On that same day, Plaintiff filed his complaint initiating this lawsuit. (ECF 23).

One of the RV's issues that Plaintiff reported on August 19, 2022, was that there were two left dining cushions. (ECF 65 at 7). The replacement cushion was not available when Plaintiff picked the RV up on October 20, 2022. (*Id.* at 8). Plaintiff returned to Thompson's on November 30, 2022, to pick up the replacement cushion, which he replaced himself. (*Id.*).

On or around February 8, 2023, Plaintiff took the RV to Velocity Truck Center, an authorized Freightliner service center, for warranty work on the throttle response issue he had experienced. (*Id.* at 9; *see also* ECF 63-15 at 1). The final Velocity invoice stated that the cause of the throttle issue was "WIRING ISSUES;" that they found several inactive accelerator codes that needed to be cleared; and that they noticed part of the carpet was pinched under the pedals. (ECF 63-15 at 2 (emphasis in original)). Velocity also reported that the RV "PASSED ROAD TEST WITH NO EVENTS OR PERFORMANCE ISSUES NOTED," and that "NO ELECTRICAL FAILURE OR PROBLEM" was noted. (*Id.* (emphasis in original)).

On March 20, 2023, Plaintiff returned the RV to Thompson's for the last time to address a windshield wiper issue. (ECF 65 at 10–11). The RV was returned to Plaintiff in one day after the repairs were made. (*Id.* at 11).

No one besides Thompson's RV and Velocity Travel Center worked on Plaintiff's RV. After all the service visits between May 2022 and February 2023, Plaintiff admits that three of the issues he reported—the throttle, the electric compartment fan, and the closet—have not been satisfactorily repaired. (ECF 63 at 4). He identified three other issues—slide-out, entry door, and refrigerator—that currently require repair but admits that those issues were never presented to Defendant or one of its authorized representatives for repair. (*Id.*).

Plaintiff's expert, Jackie Winters, reviewed the repair orders and noted that many of the concerns were verified by technicians and repaired. (ECF 63-22 at 4). Winters inspected the RV on August 11, 2023, and identified eleven issues in need of repair at that time in addition to the throttle issue. (ECF 63 at 4–5). Winters opined that the RV's issues can all be repaired. (*Id.* at 5).

Defendant's expert, Scott Craig, similarly reviewed the documentation of the RV's service history and then inspected the RV on February 29, 2024. (ECF 63-24 at 3). In his report, Craig noted the issues identified in all the repair orders from May 17, 2022, through February 2023 then described the current condition of those issues. (*Id.* at 3–8). Craig also listed more than 20 issues he observed during his February 2024 inspection then opined that the condition of each issue "does not significantly impact the motor home's use, value or safety." (*Id.* at 8–12).

Craig concluded his report opining that the RV "is in excellent condition and can be used as intended by design, manufacture and as it was sold; and can be used despite the [six] outstanding items" he identified as needing repair under the Warranty. (*Id.* at

13–14). He explicitly noted that none of these outstanding items had ever been presented for repair. (*Id*. at 13). Craig explained that the throttle issue was not covered under Defendant's Warranty and did not count it among the "outstanding items." (*Id*. at 14). Craig also stated that "[t]here were no excessive or repetitive repair attempts on any specific item, indeed each item corresponding to a specific repair order was presented once and handled accordingly." (*Id*.).

Winters was present and observed Craig's inspection on February 29, 2024. (ECF 63-22 at 10). After describing issues he noticed during the February 2024 inspection, Winters opined that "[t]he number of necessary repairs has been excessive [and the RV] is still not properly repaired . . . ." (*Id*. at 11). Winters further opined that

> It is my opinion sufficient opportunity has been given to Thor Motor Coach and its dealership technicians to correct the problematic issues on this RV but they have failed to do so within a reasonable number of attempts.
> It is my opinion that Mr. Zastawnik is justified in feeling frustrated and apprehensive in the fact that the RV cannot be used in its intended manner. I would not recommend the purchase of this RV to anyone. No reasonable person would have purchased this RV at the price paid for if they had known of the dependability and reliability problems present in the subject RV at the time of sale.

(*Id*.).

Plaintiff believes that the RV is unsafe to drive due to its issues, including the loss of power/acceleration issues related to the throttle. (ECF 65 at 13–14). As a result, he has only taken the RV on one trip—the three-day trip to Mountain Lake Resort in late July 2022. (*Id*. at 13). Plaintiff testified that he would not have purchased the RV if he knew about the problems it has. (*Id*. at 14).

The parties participated in an unsuccessful mediation session on September 22, 2023, and did not believe compromise was likely as of April 26, 2024. (ECF 49 at 2). The instant motion for summary judgment was timely filed on June 27, 2024. (ECF 55). No other dispositive motions are pending before the Court.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'," and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir.

2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory,

undeveloped arguments without discussion or citation to pertinent legal authority are

waived." (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009))).

"To defeat a motion for summary judgment, the non-moving party cannot rest

on the mere allegations or denials contained in his pleadings, but must present

sufficient evidence to show the existence of each element of its case on which it will bear

the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)

(internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*,

834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice

run; it is the put up or shut up moment in a lawsuit, when a party must show what

evidence it has that would convince a trier of fact to accept its version of the events."

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted);

*see also Goodman v.  Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## III.    DISCUSSION

### A.    California's Song-Beverly Consumer Warranty Act Claims

The Song-Beverly Consumer Warranty Act ("the Act") "regulates warranty

terms, imposes service and repair obligations on manufacturers . . . who make express

warranties, requires disclosure of specified information in express warranties, and

broadens a buyer's remedies to include costs, attorney's fees, and civil penalties."

*Murillo v. Fleetwood Enters., Inc.*, 17 Cal. 4th 985, 989 (1998) (citing Cal. Civ. Code

§§ 1790–1795.8); *see also Nat'l R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1080 (1995).

Thus, the Act mandates warranty-related conduct and provides specified remedies

enforceable through both breach of express warranty and breach of implied warranty claims. *See* Cal. Civ. Code §§ 1791.1, 1791.2; *see also Smith v LG Elects. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *9 (N.D. Cal. Mar. 11, 2014). Invoking the Act, Plaintiff raises both express and implied warranty claims, as well as a claim for an additional civil penalty against Defendant based on willful refusal to repurchase the RV. Each is now addressed in turn.

### 1.    Express Warranty Claim

The Act protects consumers who have purchased products covered by an express warranty. *Robertson v. Fleetwood Travel Trailers of Cal.*, 144 Cal. App. 4th 785, 740 (2006). The Act requires manufacturers, or their representative in California, to replace the warrantied product or reimburse the purchase price to the buyer, less the amount attributable to the buyer's use, if they do not "service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts." Cal. Civ. Code § 1793.2(b)(1).

> A plaintiff pursuing an action under the Act has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 152 (2013), *as modified on denial of reh'g* (July 8, 2013) (citing *Ibrahim v. Ford Motor Co.* 214 Cal.App.3d 878, 886–887 (1989); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001)).

*Nonconformity Element*

Whether a nonconformity substantially impairs the use, value, or safety of goods sold to a buyer is determined by assessing "what a reasonable person would understand to be a defect . . . within the specific circumstances of the buyer." *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001). Thus, whether nonconformities constitute substantial impairment must be decided by the trier of fact. *Schreidel v. Am. Honda Motor Co.*, 34 Cal. App. 4th 1242, 1250 (1995). Factors to consider include "the nature of the defects; the cost and length of time required for repair; whether past repair attempts have been successful; the degree to which the goods can be used while repairs are attempted; inconvenience to buyer; and the availability and cost of alternative goods pending repair." *Id.* (internal quotations and citations omitted).

As a preliminary matter, Plaintiff has not provided evidence to establish that the RV's throttle response issue is covered by the Warranty. In a section entitled "What Is Not Covered," the Warranty explicitly excludes "the automotive chassis and power train, including, by way of example the engine, drive-train, steering, ride and handling . . . " from coverage. (ECF 63-5 at 9). Plaintiff even acknowledges that the "Warranty doesn't include the RV's chassis." (ECF 63 at 3; *see also* ECF 62 at 15 ("While the throttle/acceleration defect may not be covered under the Thor Limited Warranty, . . . . the remainder of the RV's defects were covered under Thor's Limited Warranty.")). He merely contends that he can maintain a breach of implied warranty claim based upon the throttle nonconformity without any mention of the role of the throttle issue in the breach of express warranty claim. Additionally, Plaintiff presents no evidence or

argument to dispute that the throttle is covered under the Freightliner chassis warranty applicable to the RV, rather than Defendant's Warranty. Therefore, the throttle is not covered by the Warranty and cannot serve as the basis for the breach of express warranty claim. Only the non-throttle nonconformities with the RV will be considered.

With that said, Defendant does not directly challenge Plaintiff's ability to show that the non-throttle nonconformities substantially impair the use, value, or safety of the RV. By failing to develop any such argument, Defendant has waived any argument that Plaintiff has not established the nonconformity element. *See Mahaffey*, 588 F.3d at 1146. Accordingly, the Court proceeds as if the nonconformity element is established.

*Presentation Element*

As to the presentation element, Defendant identifies nonconformities that Plaintiff presented to Thompson's RV for repair and others that were later identified by the parties' experts, Mr. Winters and Mr. Craig, that were never presented for repair. The parties agree that Plaintiff presented the RV for warranty repairs at least two times on August 19, 2022, and March 20, 2023. Plaintiff argues that the RV's other service visits to Thompson's on May 17, 2022, July 5, 2022, and November 30, 2022, should also be counted for a total of five presentations for repair.[2] Regardless of whether the RV was presented two or five times, the record is clear that the RV was presented for repair of nonconformities satisfying the presentation element.

---

[2] Plaintiff argues that the Velocity service visit for the throttle issue is the sixth repair opportunity. The throttle is irrelevant to the express warranty claim; therefore, the Velocity visit is irrelevant.

*Failure to Repair Element*

Undisputedly, three nonconformities that Plaintiff presented to Thompson's RV were not repaired to Plaintiff's satisfaction. (ECF 63 at 4). Specifically, Plaintiff admits that the throttle, the electric compartment fan, and the closet remain unrepaired. (*Id.*). As noted above, the throttle issue need not be considered because it is not covered under Defendant's Warranty. But as to the fan and closet nonconformities, the question is whether they remained "after a reasonable number of repair attempts." *See Donlen, 217 Cal. App. 4th at 152.* The parties disagree.

The Song-Beverly Act provides remedies for RV owners like Plaintiff if the manufacturer, or its representative in California, "does not service or repair the [RV] to conform to the applicable express warranties after a reasonable number of attempts." Cal. Civ. Code § 1793.2(d)(1). "The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances . . . ." *Robertson, 144 Cal. App. 4th at 799.* However, the statute uses the plural of "attempts," which means there must be, at a minimum, "more than one opportunity to fix the nonconformity." *Id.* (citing *Silvio v. Ford Motor Co. 109 Cal. App. 4th 1205, 1208–09 (2003)*). As a result, a jury could find that two repair attempts meet the reasonableness requirement under the Act.

"Each occasion that an opportunity for repairs is provided counts as an attempt, even if no repairs are actually undertaken." *Robertson, 144 Cal. App. 4th at 799* (citing *Oregel, 90 Cal. App. 4th at 1103*). The consumer's only obligation "is to permit the manufacturer a reasonable *opportunity* to repair the vehicle." *Oregel, 90 Cal. App. 4th at 1103* (emphasis in original) (internal quotations omitted). "Whether or not the

12

manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible." *Id.* at 1103–04. Thus, Plaintiff's argument that the RV's five visits to Thompson's RV for repair should all count as repair attempts could be worth considering. Yet Plaintiff's argument stops there. He does not provide any evidence to show that even one non-throttle nonconformity was presented more than once over the course of those five visits. In other words, the record shows that none of the RV's nonconformities were presented for repair more than once.

Without more, there is no genuine dispute of material fact from which a reasonable jury could find that Defendant was given a reasonable opportunity to repair Plaintiff's RV. Therefore, Plaintiff has not put forth evidence to support the failure to repair element of the express warranty claim. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's breach of express warranty claim.

Defendant also argues that both of Plaintiff's breach of warranty claims are doomed by his failure to exhaust the remedies outlined in the Warranty — specifically the exclusive back-up remedy. (*See* ECF 63-5 at 11). The Warranty provides a Repair Remedy requiring an RV owner to present defects for repair. (*Id.*). The Warranty's "Back-Up Remedy" kicks in "[i]f the primary repair remedy fails to successfully cure any defect after a reasonable number of repair attempts . . . ." (*Id.*). Under the Back-Up Remedy, an RV owner either has Defendant "pay an independent service shop of [his] choice to perform repairs to the defect **OR** if the defect is incurable, have [Defendant] pay diminished value damages." (*Id.* (emphasis in original)). In response, Plaintiff

primarily argues that the Back-Up Remedy is unenforceable under the Song-Beverly Act's anti-waiver provision. Under the Act, "[a]ny waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1790.1. Neither the question of whether Plaintiff failed to exhaust the Warranty's remedy provisions nor the effect of the Act's anti-waiver provision on Plaintiff's breach of express warranty claim needs to be decided because Plaintiff's express warranty claim fails because he did not present sufficient evidence upon which a jury could find in his favor.

### 2.    Implied Warranty Claim

Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable" at the time of delivery absent disclaimers prescribed by the Act. Cal. Civ. Code § 1792; *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1306 (2009). An implied warranty of merchantability means that the consumer goods "[p]ass without objection in the trade under the contract description [and are] fit for the ordinary purposes for which such goods are used." *Id.* § 1791.1(a)(1)–(2).[3] "[T]he implied warranty of merchantability arises by operation of law [and] provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291, 1295 (1995), *as modified on denial of reh'g* (Sept. 21, 1995). "The

---

[3] To be merchantable, goods must also be "adequately contained, packaged, and labeled [and conform] to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a)(3)–(4). These elements are irrelevant to the arguments presented here.

core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007). A consumer good is fit for its ordinary purpose even if it is not free of all defects so long as it is "in safe condition and substantially free from defects." *Id.* at 27 (affirming jury instruction using this language); *see also Mexia*, 174 Cal. App. 4th at 1303. "[D]efects based on aesthetics or mere annoyances do not render a vehicle unmerchantable." *Resnick v. Hyundai Motor Am., Inc.*, Case No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *12 (C.D. Cal. Apr. 13, 2017) (citing other California decisions). At the same time, a defect that creates a "substantial safety hazard" would make a good unfit for its ordinary purpose thus breaching the implied warranty of merchantability. *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1248 (2018), *as modified on denial of reh'g* (Feb. 22, 2018); *see also* Cal. Civ. Code § 1791.1(a)(2).

Consistent with the California civil jury instructions for a breach of implied warranty of merchantability claim under the Act, Plaintiff must prove five factual elements as to the condition of his RV to prevail. *See* Cal. Civ. Jury Instruction 3210; *cf. Gutierrez*, 19 Cal. App. 5th at 1246. There is no dispute about the first two elements—that Plaintiff bought the RV manufactured by Defendant and that Defendant was in the business of manufacturing consumer goods at the time Plaintiff bought the RV. The parties dispute whether Plaintiff can establish the third element—that the RV was not of the same quality as those generally acceptable in the trade or fit for its ordinary purpose. The fourth and fifth elements of whether Plaintiff was harmed and whether

Defendant's breach of the implied warranty was a substantial factor in causing Plaintiff's harm only come into play if Plaintiff establishes the third element.

The parties' main dispute is whether the throttle nonconformity is a proper basis for Plaintiff's breach of implied warranty claim. If the throttle issue can be the basis of the claim, a key determination for success on the implied warranty claim would be whether the throttle issue constitutes a substantial safety hazard that would make the RV unfit for its ordinary purpose. *Gutierrez*, 19 Cal. App. 5th at 1248; *see also* Cal. Civ. Code § 1791.1(a)(2). Plaintiff may be right that a jury could find that the throttle issue constitutes a substantial safety hazard. The problem is that the throttle would have to be a product manufactured by the Defendant to satisfy the first element of a breach of implied warranty claim. *See* Cal. Civ. Jury Instruction 3210; *cf. Gutierrez*, 19 Cal. App. 5th at 1246.

No one disputes that Freightliner, not Defendant, manufactured the chassis portions of the RV. No one disputes that the chassis features of the RV, including the throttle, are covered by a Freightliner warranty rather than Defendant's Warranty. And no one disputes that Freightliner is not a party to this case. Plaintiff also concedes that "the implied warranty is coextensive with [Defendant's] limited warranty." (ECF 62 at 7). In so doing, Plaintiff acknowledges the limitation explicitly stated in the Warranty as follows:

**UNLESS PROHIBITED BY LAW, THE DURATION OF ANY IMPLIED WARRANTY OF MERCHANTABILITY, WHICH ARISES BY OPERATION OF STATE LAW, IS LIMITED: TO THE DURATION OF THE LIMITED WARRANTY;** [and] **IN SCOPE OF COVERAGE TO**

**THOSE PORTIONS OF YOUR MOTORHOME COVERED BY THIS LIMITED WARRANTY; . . . .**

(ECF 63-5 at 8) (emphasis in original). Therefore, the throttle issue cannot support Plaintiff's implied warranty claim against Defendant who did not manufacture or warrant the throttle.

Beyond any safety concerns related to the throttle, Plaintiff has not presented evidence of a substantial safety hazard arising from other nonconformities covered by Defendant's Warranty. In support of his implied warranty claim, Plaintiff designates his own deposition testimony as well as the opinions of his expert, Mr. Winters, as reflected in his report and deposition testimony. Plaintiff testified that he "believes that the RV is unsafe to drive due [to] defects, including the loss of power/loss of acceleration defect." (*Id.*). The Winters expert report states in a conclusory manner that the RV "was not merchantable and not fit for its ordinary use at the time that [Plaintiff] purchased it due to the defects." (ECF 65 at 13). Mr. Winters opined generally at his deposition about "dependability and reliability problems" in the RV to support his conclusion about merchantability, but did not discuss any safety issues beyond the throttle issue.

On review of summary judgment, the Court may only consider "facts whose substance would be admissible at trial . . . ." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). Expert witness opinion testimony must, among other things, be "based on sufficient facts or data; [be] the product of reliable principles and methods; and [reflect] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). Therefore, an expert must both set forth facts and his process of

17

reasoning in support of his opinion. *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1574 (N.D. Ill. 1996) (citing *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989). Mr. Winters's opinions about merchantability appear based upon concerns about dependability and reliability without any reasoning to connect the non-throttle issues to any safety issue. Thus, his "opinions" are barebones conclusions that do little more than regurgitate the elements of Plaintiff's implied warranty claim. As such, the opinions add nothing to the judicial process and will not be considered. *See Mid-State Fertilizer Co.*, 877 F.2d at 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). Similarly, Plaintiff's own beliefs, while potentially admissible at trial more generally, are nothing more than barebones conclusions unsupported by any evidence of the RV's safety based on the non-throttle nonconformities.

Therefore, Plaintiff has presented no evidence specific to the RV's non-throttle nonconformities that creates a genuine dispute of material fact as to their effect on the safe condition of the RV. Moreover, Plaintiff focuses his argument on the safety issues arising from the throttle nonconformity without developing any argument as to how the non-throttle nonconformities would pose a "substantial safety hazard." *See Mahaffey*, 588 F.3d at 1146 ("undeveloped arguments . . . are waived"). On this limited record lacking evidence and argument related to any "substantial safety hazard," no reasonable jury could find that the RV is unfit for its ordinary purpose. *Gutierrez*, 19 Cal. App. 5th at 1248.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's breach of implied warranty claim.[4]

### 3.    Song-Beverly Act Civil Penalty Claim

Defendant also seeks summary judgment on Plaintiff's claim for "Violation of Song Beverly Act" in which he seeks the Act's civil penalty under Section 1794. Plaintiff alleges that Defendant violated Section 1793.2(d)(1) of the Act by not repairing the RV after a reasonable number of attempts and willfully refusing his demand for repurchase of the RV. (ECF 23 at 4–5). "Any buyer of consumer goods who is damaged by a failure to comply with [the Act] may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a). If the buyer proves that the violation of the Act was willful, "the judgment may include . . . a civil penalty not to exceed two times the amount of actual damages." *Id*. § 1794(c). A plain reading of the statutory language shows that the first requirement for imposition of the Act's civil penalty is violation of the Act. *See id*. As discussed above, Defendant is entitled to judgment as a matter of law on both of Plaintiff's Song-Beverly warranty claims. Without any claim remaining upon which violation of the Act could be found, Plaintiff's civil penalty claim must also be dismissed.

### B.    Violation of Uniform Commercial Code Claim

Defendant lastly seeks summary judgment on Plaintiff's claim for "Violation of Uniform Commercial Code." Plaintiff offers no response to Defendant's assertion that

---

[4] Once again, the question of whether the Warranty's Back-Up Remedy is enforceable given the Song-Beverly Act's anti-waiver provision need not be reached as Plaintiff has not met his evidentiary burden on summary judgment. *See Hammel*, 407 F.3d at 859; *Goodman*, 621 F.3d at 654.

his U.C.C. claim merely repackages the warranty claims already decided without alleging a separate "breach of UCC" claim. In fact, Plaintiff's brief in opposition to Defendant's motion for summary judgment does not make any argument as to his U.C.C. claim. Plaintiff has not presented any evidence to show the existence of each element of any separate U.C.C. claim that may exist. *See Robin*, 200 F.3d at 1088. As a result, the record includes nothing upon which a trier of fact could find in favor of Plaintiff on his U.C.C. claim, and the Court will not sift through the evidence of record to develop any arguments in favor of his claim. *See Matshushita Elec. Indus. Co.*, 475 U.S. at 587; *Waldridge*, 24 F.3d at 920; *Nelson*, 657 F.3d at 590; *Mahaffey*, 588 F.3d at 1146. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's U.C.C. claim.

### C.    Doe Defendants 1 through 10

Plaintiff's complaint names "Does 1 through 100, inclusive" as defendants and levels all four causes of action against the Doe Defendants in addition to Defendant Thor Motor Coach. (ECF 23). Plaintiff alleges that he

> is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 100, inclusive ("Doe Defendants"), and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the fictitiously named Doe Defendants has participated in some way in the wrongful acts and omissions alleged below, and is liable to Plaintiff for damages and other relief to which Plaintiff is entitled.

(*Id.* at 2, ¶ 5). On December 28, 2022, the California federal court dismissed Doe Defendants 11 through 100, inclusive, pursuant to that court's local rules. (ECF 10). With summary judgment being granted in favor of Defendant Thor on all claims, the only remaining claims in this case are those against the remaining ten Doe Defendants.

While Plaintiff named Does 1 through 10 as defendants in his complaint on October 20, 2022, the record contains no evidence that he has continued to prosecute his claims against them. As of this date, no proof of service as to the ten Does has been filed. No appearance of any kind has been made by, or on behalf of, any of the ten Does either.

Fed. R. Civ. P. 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Named defendants who did not move for summary judgment must not be dismissed *sua sponte* on Rule 4(m) grounds before giving the plaintiff notice, opportunity to show good cause, and opportunity to request an extension of time to perfect service. *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005). However, "[d]ismissal of a John Doe defendant on the court's own motion for plaintiff's failure to timely identify the defendant and obtain service of process within the limits of Fed. R. Civ. P. 4(m) is permissible, even without notice to plaintiff." *Crawford v. Countrywide Home Loans, Inc.*, No. 3:09CV247-PPS-CAN, 2010 WL 597942, at *6 (N.D. Ind. Feb. 12, 2010), *aff'd*, 647 F.3d 642 (7th Cir. 2011) (citing *Brengettcy*, 423 F.3d at 683).

Plaintiff here has neither identified the ten Doe Defendants nor provided proof that he obtained service of process within the time limit of Rule 4(m). Therefore, Doe Defendants 1 through 10, inclusive are dismissed pursuant to Fed. R. Civ. P. 4(m). *See Brengettcy*, 423 F.3d at 683.

## IV.    CONCLUSION

For the reasons discussed above, Plaintiff has neither established any genuine dispute of material fact nor presented sufficient evidence of all elements of his claims. As a result, Defendant Thor Motor Coach, Inc. is entitled to judgment as a matter of law on all Plaintiff's claims. *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Robin*, 200 F.3d at 1088. Accordingly, Defendant's motion for summary judgment is **GRANTED**. (ECF 55). Further, Plaintiff's claims against Doe Defendants 1 through 10, inclusive are **DISMISSED** pursuant to Fed. R. Civ. P. 4(m).

The Clerk is directed to enter judgment in Defendant Thor Motor Coach Inc.'s favor.

SO ORDERED on March 21, 2025.

   /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT